The opinion of the Court was delivered by
Warduaw, A. J.
In the argument before this Court the counsel for the prisoner has rested his motion in arrest of judgment upon two objections to the jury which tried him: 1. That the jurors were not drawn under competent authority. 2. That they were drawn from a box which contained the names of a class of persons who were not qualified to serve as jurors. Under these objections, there has been urged nothing but non-conformity, in the proceedings had for drawing the jurors, .with the general orders of the Commandant of this, the Second Military District, construed as those orders must be with reference to the laws of the State which they alter.
The first objection may be resolved into this, that the Governor did not order a special Court at which the jurors *43 were drawn. Ey paragraph fourth of General Orders No. 89, September 13, 1867, the Governor was authorized to order a special term of the Court “ to be held for the purpose of revising and preparing jury-lists, and to provide for summoning and drawing jurors, in accordance with the requirements of this order.” No other regulation of the State, or of the military district, gave authority to the Governor in the matter. Judge Dawkins, at Abbeville, gave in w'riting directory orders to the clerk, sheriff and tax-collector of Anderson District; but even if he had power, whilst he was holding a Court in another district, to order an extra Court for Anderson, (1825, 7 Stat. 329, § 1, State vs. Harden, 2 Rich. 535,) he did not do so, but expected his directions to be made effective by an order from the Governor. The Governor made no mention of a special, or extra term of Court in his order, but directed the clerk and sheriff to procure lists, place names in a box, and from that box draw jurors for the approaching term. The presence of a magistrate is not required by the Governor’s order; but if it had been, there would still have been wanting to the assemblage which actually took place, of magistrate, clerk and sheriff’ the order for a Court, or the existence of circumstances which the laws of the State had provided for; one or the other of which was essential to communicate legal authority to these inferior officers in respect to juries. The Governor’s order plainly contemplated proceedings similar to those which are directed by Acts of the Legislature concerning extra Courts, (1825, 7 Stat. 329 ; 1839, 11 Stat. § 13; 1843, 11 Stat. 254, § 5;) but it omitted what, under the military orders, might have made sufficient the drawing of a jury by the clerk, sheriff and magistrate, in some contingency which, under some one of those Acts, would have conferred authority upon those officers. When the penalty of death is to be adjudged, those who sit in judgment must be scrupulously *44 exact in their requisitions of regularity in the proceedings ; and the case o'f Harden before cited shows how zealously the Court has enforced strict conformity with law in respect to juries drawn at an extra term.
The second objection to the juries seems also to have been well taken. Under the Governor’s order there were placed in the box the names of all registered voters, who had paid their taxes to the State for the current year, as well those who had paid a poll tax only, as those who had paid taxes assessed upon property. From the earliest provincial times down to the Constitution of September, 1865, and afterwards in the year 1865 and 1866, there occur in the public proceedings, and especially in the Tax Acts of South Carolina, the words assess, assessed, assessor and assessment, all of which have manifestly been used invariably so as to include the ideas of property, valuation and proportion; and the signification of assessed, as thus frequently used and well understood in this State, will appear, by comparison of General Orders No. 32 and No. 89, with General Orders No. 100, to have prevailed at the head quarters of this military district. General Orders No. 32, May 30, 1867, declared that “all citizens assessed for taxes, and who shall have paid taxes for the current year, are qualified to sit as jurors.” General Orders No. 89, modifying No. 32, is as follows: “ All citizens assessed ■for taxes, and who shall have paid taxes for the current year, and who are qualified, and have been or may be duly registered as voters, are hereby declared qualified to serve as jurors; any requirement of a property qualification for jurors, in addition to the qualifications herein prescribed, is hereby abrogated.” General Orders No. 100, October 17, 1867, (which had not reached Anderson when this case was tried,) declared that the juries drawn and summoned, under the provisions of General Orders No. 32, should be empanelled for all jury causes at the terms of the Courts *45 then next ensuing, tbe right of challenge for non-registration, under General Orders No. 89, being preserved; and, second, that in drawing juries at the fall term for the next succeeding terms, “the juries shall be drawn from the lists of all citizens who have paid taxes for the current year, but in the manner prescribed by the laws -of the State,” provisions being added for preservation of the right of challenge as under General Orders No. 89; and, third, that where juries have been empanelled in conformity with General Orders No. 89, “ such panels shall be deemed and held to be valid and effective panels;” We have, in considering the first objection, held that the jury in this case was not empanelled in conformity with General Orders No. 89, because of the want of a proper order for a special Court; and, under the second objection, we see that in varying the phraseology from “ citizens assessed for taxes and who shall have paid ” to “ citizens who have paid taxes ” the distinction was in mind which exists between a tax on property proportioned to its valué, and a fixed unvarying tax, such as a poll tax.
The abrogation of other property qualification, which is made by the third paragraph of General Orders No. 89, may have had reference to some law of North Carolina unknown to us; but if it looked only to South Carolina law, it is explained by the course of legislation in this State. By the State Constitution of 1790, (art. 1, § 4,) a voter was required to have “paid a tax the preceding year of three shillings sterling towards the support of the Government.” An Act of 1798, (7 Stat. 289, § 7,) required a grand juror to have paid the preceding year a tax of three dollars, and a petit and common pleas juror a tax of one dollar. In 1799, (7 Stat. 291, § 6,) all jurors were required to be persons “ entitled- by the Constitution of this State to vote for members of the State Legislature.” In 1810, (1 Stat. 195,) an amendment of the State Constitution *46 was ratified, whereby property or payment' of taxes was no longer required for a voter resident in the district where he offers to vote; and in 1857, (12 Stat. 661,) it was enacted that " every person who may be entitled by the Constitution of this State to vote for members of the State Legislature, and who shall have paid, the year preceding the sitting of the Court at which a new jury-list shall be made, a tax of any amount whatever, for property held in his own right, shall be liable to serve as a petit and Common Pleas juror.” The abrogation of a property qualification, made by Orders No. 89, served then to place all jurors, grand and petit, on the same footing ; and as to the petit, merely added a new class of tax-payers to those who had been qualified by the Act of 1857.
We conclude that what has been treated as a verdict against the prisoner was rendered by persons not properly constituting a jury, and that, as in the case of Harden, the prisoner must be remanded to stand his trial.
Motion in arrest of judgment granted.
DüNKiN, C. J., and Inglis, A. J., concurred.
Motion granted.